# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Tracey L. W.,                                    Case No. 21-cv-2441 (TNL)

            Plaintiff,

v.                                                             **ORDER**

Kilolo Kijakazi,
Commissioner of Social Security,

            Defendant.

Jennifer Latstetter Dunn, Dunn Law, PLLC, 890 Winter Street, Suite 230, Waltham, MA 02451; and Katherine D. Gilbert, Law Offices of Katherine Gilbert, LLC, 6685 404th Street, North Branch, MN 55056 (for Plaintiff); and

Marisa Silverman and James D. Sides, Social Security Administration, Office of Program Litigation, 6401 Security Boulevard, Baltimore, MD 21235; and Ana H. Voss, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415 (for Defendant).

## I. INTRODUCTION

Plaintiff Tracey L. W. brings the present case, contesting Defendant Commissioner of Social Security's denial of disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, and supplemental security income ("SSI") under Title XVI of the same, 42 U.S.C. § 1381 *et seq.* The parties have consented to a final judgment from the undersigned United States Magistrate Judge in accordance with 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, and D. Minn. LR 72.1(c).

This matter is before the Court on the parties' cross motions for summary judgment. ECF Nos. 16, 18. Being duly advised of all the files, records, and proceedings herein, **IT**

1

**IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment, ECF No. 16, is **DENIED**, and the Commissioner's Motion for Summary Judgment, ECF No. 18, is **GRANTED**.

## II. PROCEDURAL HISTORY

On February 8, 2019, Plaintiff applied for DIB and SSI.  Tr. 11, 293-99.  Plaintiff asserted that she has been disabled since October 22, 2018. Tr. 11, 293, 300.  Plaintiff's applications were denied initially and again upon reconsideration.  Tr. 11, 134-171, 208-11, 215-20, 225-31.

Plaintiff appealed the reconsideration of her DIB and SSI determinations by requesting a hearing before an administrative law judge ("ALJ").  Tr. 11, 232-33.  The ALJ held a hearing on September 30, 2020, Tr. 32-92, and issued an unfavorable decision on December 17, 2020.  Tr. 8-31.  After receiving an unfavorable decision from the ALJ, Plaintiff requested review from the Appeals Council, which was denied.  Tr. 1-7.

Plaintiff then filed the instant action, challenging the ALJ's decision.  Compl., ECF No. 1.  The parties have filed cross motions for summary judgment.  ECF Nos. 16, 18.  This matter is now fully briefed and ready for a determination on the papers.

## III. SEPARATION OF POWERS

As an initial matter, Plaintiff asserts that the structure of the Social Security Administration is "constitutionally invalid," and the appointment of Andrew Saul as a single Commissioner of the Social Security Administration, who is removable only for cause and serves a longer term than that of the President, violates separation of powers. Pl.'s Mem. in Supp., ECF No. 17 at 21.  "Because the ALJ's delegation of authority in this

case came from Mr. Saul," Plaintiff argues that the ALJ's decision is "constitutionally defective." *Id*. Plaintiff further argues that the ALJ decided this case "under invalid regulations promulgated by a Commissioner," namely, Mr. Saul, when he had "no constitutional authority" to issue those rules, and therefore "a presumptively faulty legal standard was used to adjudicate this claim at the administrative level." *Id*. at 22. Plaintiff requests that this case be "remanded for a *de novo* hearing before a new ALJ who do[es] not suffer from the unconstitutional taint of having previously heard and decided this case without lawful authority to do so." *Id*. at 23.

"Removal of the Commissioner of Social Security is governed by 42 U.S.C. § 902(a)(3)." *Lisa Y. v. Comm'r of Soc. Sec.*, 570 F. Supp. 3d 993, 1001 (W.D. Wa. 2021). Under § 902(a)(3), the Commissioner serves a term of six years and "may be removed from office only pursuant to a finding by the President of neglect of duty or malfeasance in office." The Commissioner concedes, and courts have found, that "§ 902(a)(3) violates the separation of powers to the extent it is construed as limiting the President's authority to remove the Commissioner without cause" following the Supreme Court's decisions in *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183 (2020), and *Collins v. Yellen*, 141 S. Ct. 1761 (2021). Comm'r's Mem. in Supp., ECF No. 19 at 7; *see* Office of Legal Counsel, U.S. Dep't of Justice, *Constitutionality of the Comm'r of Soc. Sec.'s Tenure Protection*, 2021 WL 2981542, at \*7 (July 8, 2021) ("In light of the Court's reasoning in *Collins* and *Seila Law*, we have reexamined the constitutional concerns that we previously raised about the Commissioner's protection from removal when Congress enacted the provision in 1994. We believe that the best reading of those decisions compels

3

the conclusion that the statutory restriction on removing the Commissioner is unconstitutional."); *see, e.g.*, *Kaufmann v. Kijakazi*, 32 F.4th 843, 849 (9th Cir. 2022) ("The removal provision violates separation of powers principles. For the purpose of the constitutional analysis, the Commissioner of Social Security is indistinguishable from the Director of the [Federal Housing Finance Agency] discussed in *Collins* and the Director of the [Consumer Financial Protection Bureau] discussed in *Seila Law*."); *Lisa Y.*, 570 F. Supp. 3d at 1001 ("A straightforward application of *Seila Law* and *Collins* dictates a finding that § 902(a)(3)'s removal provision violates separation of powers. As in *Seila Law* and *Collins*, the Social Security Commissioner is a single officer at the head of an administrative agency and removable only for cause. *See* 42 U.S.C. § 902(a)(3). Section 902 thus has the same infirmity as the removal provisions at issue in *Seila Law* and *Collins*.").

Nonetheless, "[t]he Supreme Court held in *Collins* that an unconstitutional removal provision does not affect the *authority* of the underlying agency officials to act." *Kaufmann*, 32 F.4th at 849.

> In *Collins*, the Supreme Court held that where an unconstitutional statutory removal restriction exists, a plaintiff seeking relief on that basis must show that the restriction caused her alleged harm. The Court reasoned that the relevant agency officials were 'properly appointed' pursuant to a statute that exhibited 'no constitutional defect in the . . . method of appointment' and that 'the unlawfulness of [a] removal provision does not strip [an official] of the power to undertake the other responsibilities of his office[.]' The Court continued that 'there is no reason to regard any of the actions taken' by the agency during this period 'as void.'

*Alice T. v. Kijakazi*, No. 8:21CV14, 2021 WL 5302141, at *18 (D. Neb. Nov. 15, 2021) (alteration in original) (citations omitted).  Thus, "an officer properly appointed may exercise the authority of his office even though the statute purports to grant him unconstitutional removal protections." *Andre J. B. v. Kijakazi*, No. 20-cv-2320 (SRN/HB), 2022 WL 2308961, at *12 (D. Minn. June 6, 2022); *see Jean P. v. Kijakazi*, No. 8:21-CV-200, 2022 WL 1505797, at *13 (D. Neb. May 12, 2022) ("Even assuming the unconstitutionality of § 902(a)(3)'s removal provision, then-Commissioner Saul was permitted to undertake the responsibilities of his office, including the delegation of power to the ALJ and Appeals Council to decide cases." (footnote omitted)); *see also Collins*, 141 S. Ct. at 1788 n.23.  Here, Plaintiff bases her constitutional challenge on the propriety of § 902(a)(3).  She does not contest the adjudicators' appointments, but rather the delegation of authority from Mr. Saul.  Pl.'s Reply, ECF No. 20 at 6 ("Plaintiff's challenge in the instant case is an entirely distinct one which contests not the adjudicators' appointments, but rather the delegation of authority under which they adjudicated and then decided this case."); *see Kaufmann*, 32 F.4th at 849 ("[T]he ALJ, the members of the Appeals Council, Acting Commissioner Berryhill, and Commissioner Saul all served, at all relevant times, under valid appointments. 'As a result, there is no reason to regard any of the actions taken by the [agency] as void.'").  Accordingly, Plaintiff's assertion that the ALJ was without "lawful authority" to decide this case is without merit.  *See* Pl.'s Mem. in Supp. at 23; *see, e.g.*, *Kaufmann*, 32 F.4th at 849; *Hernandez v. Comm'r of Soc. Sec. Admin.*, No. CV-20-02070-PHX-JAT, 2022 WL 2286801, at *4 (D. Ariz. June 23, 2022); *Brown v. Kijakazi*, No. 1:20-CV-1035, 2022 WL 2222683, at *14-16 (M.D. N.C. June 21, 2022); *Andre J.B.*,

5

2022 WL 2308961, at *12; *Jean P.*, 2022 WL 1505797, at *13; *Lisa D. v. Kijakazi*, No. 8:21-CV-294, 2022 WL 952778, at *7 (D. Neb. Mar. 30, 2022); *Nudelman v. Comm'r of Soc. Sec. Admin.*, No. CV-20-08301-PCT-MTL, 2022 WL 101213, at *13 (D. Ariz. Jan, 11, 2022); *Lisa Y.*, 570 F. Supp. 3d at 1002-03.

Moreover, "[u]nconstitutional for-cause removal challenges alone . . . will not automatically serve to invalidate the ALJ's decision." *Nudelman*, 2022 WL 101213, at *13; *see Jean P.*, 2022 WL 1505797, at *14 ("The fact a party has been impacted by a decision of an agency that suffers from an alleged unconstitutional removal restriction does not mean that the actions or decisions of the agency are necessarily void or that the party is entitled to judicial relief."). "A party challenging an agency's past actions must . . . show how the unconstitutional removal provision *actually harmed* the party . . . ." *Kaufmann*, 32 F.4th at 849; *see also Andre J. B.*, 2022 WL 2308961, at *12.

Like the claimant in *Jean P.*, Plaintiff argues that the harm she suffered was not receiving "a constitutionally valid hearing and adjudication process from the ALJ" or "a constitutionally valid adjudication process from SSA's Appeals Council." Pl.'s Reply at 9-10; *see also Jean P.*, 2022 WL 1505797, at *14 ("[The claimant] argues the harm she suffered was not receiving a constitutionally valid hearing, adjudication, or decision from either the ALJ or the Appeals Council."). But also like the claimant in *Jean P.*, Plaintiff "has not shown a clear connection" between § 902(a)(3)'s limitation on removal and "the ALJ's and Appeals Council's decision denying her benefits." 2022 WL 1505797, at *14. The harm Plaintiff alleges is essentially the same as her absence-of-authority argument, namely, all the actions taken by the ALJ and the Appeals Council are void because of the

removal restriction itself.  As the Commissioner points out, "[u]nder Plaintiff's theory, she should be awarded a rehearing for no reason other than [§] 902(a)(3)'s existence, whether or not she can show that its restriction on the President's ability to remove the Commissioner had any effect on her benefits claim."  Comm'r's Mem. in Supp. at 12-13. Absent "any causal link between the unconstitutional removal protection and the denial of [Plaintiff's] application," *Andre J. B.*, 2022 WL 2308961, at *12, Plaintiff "has not demonstrated the removal provision caused compensable harm," *Jean P.*, 2022 WL 1505797, at *14; *see also Kauffman*, 32 F.4th at 850 ("Nothing in the record suggests any link whatsoever between the removal provision and Claimant's case."); *Hernandez*, 2022 WL 2286801, at *4 ("Accordingly, because Plaintiff has not sufficiently alleged any actual, particularized harm and tied it to the unconstitutional statutory removal restriction in the Social Security Act, the Court declines to remand the case for a new hearing on this basis." (footnote omitted)); *see also, e.g.*, *Alice T.*, 2021 WL 5302141, at *18; *Lisa Y.*, 570 F. Supp. 3d at 1003-04; *Boger v. Kijakazi*, No. 1:20-CV-00331-KDB, 2021 WL 5023141, at *3 (W.D. N.C. Oct. 28, 2021); *cf. Collins*, 141 S. Ct. at 1802 ("Consider the hundreds of thousands of decisions that the Social Security Administration (SSA) makes each year. The SSA has a single head with for-cause removal protection; so a betting person might wager that the agency's removal provision is next on the chopping block.  But given the majority's remedial analysis, I doubt the mass of SSA decisions—which would not concern the President at all—would need to be undone.  That makes sense.  Presidential control does not show itself in all, or even all important, regulation.  When an agency decision would not capture a President's attention, his removal authority could not make a

difference—and so no injunction should issue." (Kagan, J., concurring) (quotation and citations omitted)).

As Plaintiff has not met her burden to show that the removal protection in § 902(a)(3) affected the determination of her claim, the Court denies Plaintiff's motion and grants the Commissioner's motion with respect to Plaintiff's request for remand based on the argument that § 902(a)(3) violates separation of powers.[1]

## IV. DISABILITY CLAIM

### A.  Legal Standard

Disability benefits are available to individuals who are determined to be under a disability.  42 U.S.C. § 423(a)(1); 20 C.F.R. § 404.315.  An individual is considered to be disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. § 404.1505(a).  This standard is met when a severe physical or mental impairment, or impairments, renders the individual unable to do her previous work or "any other kind of substantial gainful work which exists in the national economy" when taking into account her age, education, and work experience.  42 U.S.C. § 423(d)(2)(A); *see* 20 C.F.R. § 404.1505(a).

---

[1] Accordingly, the Court declines to consider the other arguments advanced by the Commissioner, including, the harmless error doctrine, the de facto officer doctrine, the rule of necessity, and broad prudential considerations.  *See* Comm'r's Mem. in Supp. at 14-18; *see, e.g.*, *Hernandez*, 2022 WL 2286801, at *4 n.1; *Jean P.*, 2022 WL 1505797, at *15 n.7; *Alice T.*, 2021 WL 5302141, at *19.

The ALJ determines disability according to a five-step, sequential evaluation process.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

> To determine disability, the ALJ follows the familiar five-step process, considering whether: (1) the claimant was employed; (2) she was severely impaired; (3) her impairment was, or was comparable to, a listed impairment; (4) she could perform past relevant work; and if not, (5) whether she could perform any other kind of work.

*Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010).  In general, the burden of proving the existence of disability lies with the claimant.  20 C.F.R. §§ 404.1512(a), 416.912(a).

In this evaluation process, the ALJ determines the claimant's residual functional capacity, which "is the most [s]he can do despite h[er] limitations."  20 C.F.R. § 404.1545(a)(1); *accord* 20 C.F.R. § 416.945(a)(1).  "An ALJ determines a claimant's [residual functional capacity] based on all the relevant evidence, including the medical records, observations of treating physicians and others, and [the] individual's own description of [her] limitations."  *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017) (quotation omitted).  "Because a claimant's [residual functional capacity] is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace."  *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012) (quotation omitted); *accord Schmitt v. Kijakazi*, 27 F.4th 1353, 1360 (8th Cir. 2022).  At the same time, the residual-functional-capacity determination "is a decision reserved to the agency such that it is neither delegated to medical professionals nor determined exclusively based on the contents of medical records."  *Norper v. Saul*, 964 F.3d 738, 744 (8th Cir. 2020); *see Perks*, 687 F.3d at 1092.  As such, there is no requirement

9

that a residual-functional-capacity determination "be supported by a specific medical opinion." *Schmitt*, 27 F.4th at 1360 (quotation omitted).   Nor is an ALJ "limited to considering medical evidence exclusively." *Id.* (quotation omitted).  Accordingly, "[e]ven though the [residual-functional-capacity] assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." *Perks*, 687 F.3d at 1092 (quotation omitted); *accord Schmitt*, 27 F.4th at 1360.

Judicial review of the Commissioner's denial of benefits is limited to determining whether substantial evidence on the record as a whole supports the decision, 42 U.S.C. § 405(g), or if the ALJ's decision resulted from an error of law. *Nash v. Comm'r, Soc. Sec. Administration*, 907 F.3d 1086, 1089 (8th Cir. 2018) (citing 42 U.S.C. § 405(g); *Chismarich v. Berryhill*, 888 F.3d 978, 979 (8th Cir. 2018)).   Thus, the Court reviews whether the ALJ's decision is supported by substantial evidence in the record as a whole. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).  "[T]he threshold for such evidentiary sufficiency is not high." *Id.*  "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* (quotation omitted); *see, e.g.*, *Chismarich*, 888 F.3d at 979 (defining "substantial evidence as less than a preponderance but enough that a reasonable mind would find it adequate to support the conclusion" (quotation omitted)).

This standard requires the Court to "consider both evidence that detracts from the [ALJ's] decision and evidence that supports it." *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011); *see Grindley v. Kijakazi*, 9 F.4th 622, 627 (8th Cir. 2021).  The ALJ's decision "will not [be] reverse[d] simply because some evidence supports a conclusion

other than that reached by the ALJ." *Boettcher*, 652 F.3d at 863; *accord Grindley*, 9 F.4th at 627; *Perks*, 687 F.3d at 1091. "The court must affirm the [ALJ's] decision if it is supported by substantial evidence on the record as a whole." *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016) (quotation omitted). Thus, "[i]f, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Perks*, 687 F.3d at 1091 (quotation omitted); *accord Chaney*, 812 F.3d at 676.

### B. ALJ's Decision

The ALJ concluded that Plaintiff had the following severe impairments: rheumatoid arthritis; lumbar, thoracic, and cervical degenerative disc disease; anorexia with related choking phobia; panic disorder; bipolar disorder; generalized anxiety disorder; post traumatic stress disorder; attention deficit hyperactivity disorder; cannabis dependence; fibromyalgia; chronic obstructive pulmonary disease; asthma; and trochanteric bursitis. Tr. 14-15. The ALJ found that none of these impairments individually or in combination met or equaled a listed impairment in 20 C.F.R. pt. 404, subpt. P, app.1. Tr. 15-17. The ALJ then found that Plaintiff had the residual functional capacity to perform light work[2] with additional limitations as follows:

---

[2] As set forth in the regulations,

> [l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the ALJ] determine[s] that

> She can occasionally reach overhead, is limited to occasional exposure to temperature extremes, humidity, vibration, airway irritants, and hazards, and is limited to simple routine repetitive tasks, and superficial occasional contact with others, where superficial is defined as rated no lower than an 8 on the selected characteristics of occupations' people rating.

Tr. 17.  The ALJ found that Plaintiff was unable to perform her past relevant work as a telephone solicitor.  Tr. 22-23.  However, the ALJ found that Plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy.  Tr. 23-24.  Specifically, based on Plaintiff's age, education, work experience, residual functional capacity, and the testimony of the vocational expert, the ALJ found that Plaintiff was capable of making a successful adjustment to the representative occupations such as router, routing clerk, and laundry worker.  Tr. 23-24.  Accordingly, the ALJ concluded that Plaintiff was not under disability.  Tr. 24.

Plaintiff claims that the ALJ erred in his decision in two ways.  First, Plaintiff contends that the ALJ analyzed the persuasiveness of the opinion of one of Plaintiff's treating sources improperly.  Pl.'s Mem. in Supp. at 12-17.  Second, Plaintiff argues that the ALJ analyzed Plaintiff's pain and symptoms improperly.  *Id*. at 17-20.  The Court address each argument in turn.

### C.  Persuasiveness of Alex Mullins' Opinion

Plaintiff contends that the ALJ erred in his analysis of Alex Mullins' opinion because he failed to analyze the opinion properly under the factors set forth in 20 C.F.R. §

---

> he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b); *accord* 20 C.F.R. § 416.967(b).

404.1520c.  Pl.'s Mem. in Supp. at 11-17.  Specifically, Plaintiff contends that the ALJ failed to analyze and articulate the supportability and consistency factors when he found Mullins' opinion unpersuasive.  *Id.* at 12.

On October 4, 2019, Alex Mullins, APRN, completed a psychological treating source statement.  *See* Tr. 1109-13.  He noted that he started treating Plaintiff on April 30, 2019, and has treated Plaintiff for bipolar II disorder, anorexia nervosa, and post-traumatic stress disorder.  Tr. 1109.  He wrote that Plaintiff "struggles to maintain weight, often losing weight that she has gained."  Tr. 1109.  He also wrote that Plaintiff has "moderate to severe depression," "relatively severe anxiety," and "sleep problems related to post traumatic events."  Tr. 1109.

Mullins opined that Plaintiff was moderately limited in her ability to understand, remember, or apply information, noting that "problem-solving will be difficult for [Plaintiff], especially in high-stress situations."  Tr. 1111.  He also opined that Plaintiff was moderately limited in her ability to interact with others, as she "is likely to become extremely overwhelmed when interacting with others in the public setting."  Tr. 1111 (emphasis in original).  He further opined that Plaintiff was extremely limited in her ability to concentrate, persist, or maintain pace.  Tr. 1111.  Mullins wrote that Plaintiff "is often restless, and has a lot of difficulty staying engaged with tasks that require prolonged focus of multiple steps. She would likely require frequent to constant support/reminders to 'keep up.'"  Tr. 1111.  Mullins also opined that Plaintiff was markedly limited in her ability to adapt or manage oneself, noting that she "has been unable to independently manage a job, housing, and her physical/emotional well-being over the past 2-3 decades."  Tr. 1111.  He

concluded that Plaintiff was markedly limited in her ability to understand and carry out detailed but uninvolved written or oral instructions, but only mildly limited in her ability to remember locations and work-like procedures and understand and carry out very short and simple instructions.  Tr. 1112.  Mullins opined that Plaintiff could maintain attention and concentration for less than 30 minutes before needing redirection or a break, she would not be able to maintain regular attendance and be punctual within customary tolerances, she would be "off task" more than 25% of a typical workday, and she would be absent from work as a result of her impairments more than four days per month.  Tr. 1112-13.  He noted that Plaintiff could not work appropriately with the general public, could sometimes work appropriately with co-workers, and could work appropriately with supervisors.  Tr. 1112.  He opined that Plaintiff did have the ability to maintain socially appropriate behavior but did not have the ability to respond appropriately to changes in work settings.  Tr. 1113.

In his decision, the ALJ summarized Mullins' opinion, writing that Mullins "opined that [Plaintiff] is extremely limited in her ability to concentrate, persistence or maintain pace, and markedly limited in her ability to adapt or manage [her]self."  Tr. 21.  The ALJ found Mullins' opinion "not persuasive," writing:

> I do not find [Mullins'] opinion persuasive, as neither the objective findings of the provider or the objective findings in the record as a whole support the level of limitations he alleges. Specifically, his mental status examinations are variable but, at their worst, would support only moderate limitations in concentrating, persisting or maintaining pace, as discussed above. Thus, his opinion, while internally supported, is not supportable and is not persuasive.

Tr. 21.

Plaintiff argues that the ALJ erred by failing to articulate the supportability and consistency of Mullins' opinion. Pl.'s Mem. in Supp. at 12. According to Plaintiff, "the ALJ erred by not further elaborating on what they meant by how the opinion was 'internally supported, but not supportable.'" *Id*. at 13. Further, she argues that the ALJ failed to explain "how specifically [Mullins'] opinion is inconsistent with the evidence from the medical evidence of record as a whole." *Id*. Plaintiff contends that Mullins' opinion is consistent with and supported by the medical evidence of record and the symptoms noted by Plaintiff. *Id*. at 14-15. The Court finds, however, that the ALJ properly considered the supportability and consistency of Mullins' opinion.

When determining a claimant's residual functional capacity, an ALJ must consider all medical opinions submitted and evaluate them for persuasiveness. 20 C.F.R. § 404.1520c; *accord* 20 C.F.R. § 416.920c. Under the regulations, the ALJ does not defer to any medical opinions, including opinions from the claimant's treating medical sources. 20 C.F.R. § 404.1520c(a); *accord* 20 C.F.R. § 416.920c(a). The ALJ instead considers all medical opinions according to five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors. 20 C.F.R. § 404.1520c(c); *accord* 20 C.F.R. § 416.920c(c). The first two factors, supportability and consistency, are the most important factors, and the ALJ must explain how they were considered in determining the persuasiveness of a medical opinion. 20 C.F.R. § 404.1520c(b)(2); *accord* 20 C.F.R. § 416.920c(b)(2). "No talismanic language is required for the ALJ to meet the requirements of § 404.1520c, only that the ALJ make it clear that they considered the supportability and consistency of an opinion." *Mario O. v. Kijakazi*,

No. 21-cv-2469 (NEB/ECW), 2022 WL 18157524, at *11 (D. Minn. Dec. 13, 2022) (citing *Diane M. W. v. Kijakazi*, No. 20-cv-2651 (SRN/ECW), 2022 WL 4377731, at *5 (D. Minn. Sept. 22, 2022)), *report and recommendation adopted*, 2023 WL 136590 (D. Minn. Jan. 9, 2023).  The ALJ is not required to explain the remaining factors unless the ALJ "find[s] that two or more medical opinions . . . about the same issue are both equally well supported . . . and consistent with the record . . . but are not exactly the same."  20 C.F.R. § 404.1520c(b)(2)-(3); *accord* 20 C.F.R. § 416.920c(b)(2)-(3).

First, supportability means "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(1); *accord* 20 C.F.R. § 416.920c(c)(1).  "In other words, an opinion is more persuasive if it presents more relevant objective medical evidence and explanatory rationale in support of the opinion."  *Morton v. Saul*, No. 2:19-CV-92 RLW, 2021 WL 307552, at *7 (E.D. Mo. Jan. 29, 2021).  In this case, the ALJ found that that no "objective findings of [Mullins] or the objective findings in the record as a whole support the level of limitations he alleges," namely, an extreme limitation in her ability to concentrate, persist, or maintain pace, and a marked limitation in her ability to adapt or manage herself.  Tr. 21.  The ALJ noted that the mental status examinations, at most, "support only moderate limitations in concentrating, persisting or maintaining pace."  Tr. 21.

The Court finds that the ALJ properly considered the supportability factor by finding that Mullins' opinion was not supported by the record.  The ALJ noted that "[n]o

mental status examination shows impaired memory, concentration or attention" to support an extreme limitation in Plaintiff's ability to concentrate and maintain pace.  Tr. 17.  The ALJ referenced "normal mental status exams" throughout the relevant period which do not support Mullins' opinion.  Tr. 20; *see also, e.g., Hirner v. Saul*, No. 2:21-CV-38 SRW, 2022 WL 3153720, at *5 (E.D. Mo. Aug. 8, 2022) (finding that an ALJ properly considered the supportability factor by noting that there was "no persuasive support in the record for a finding [the claimant] would arrive late, leave early or miss work more than three times per month").  Mullins failed to cite any objective medical evidence or provide persuasive explanations to support his medical opinion.  *See* 20 C.F.R. § 404.1520c(c)(1); *accord* 20 C.F.R. § 416.920c(c)(1).  For example, in Mullins' treating source statement, when asked to identify particular clinical findings, including results of mental status examinations which demonstrate the severity of Plaintiffs mental impairment and symptoms, he wrote, "[Plaintiff] has difficulty with attention and concentration, and can have difficulty with episodic crying. She is often quite anxious as well, which is likely a result of PTSD. It is extremely difficult for [her] to stay engaged in tasks, and she has significant difficulty following through on elements of daily life." Tr. 1110.  Thus, as the ALJ noted, even if Mullins' notes may support his opinion that Plaintiff is extremely limited in her ability to concentrate, persist, or maintain pace and markedly limited in her ability to adapt or manage herself, his opinion is not "supported with a good explanation and citations to the objective medical evidence."  *See McClure v. Saul*, No. 1:21-CV-20 SRW, 2022 WL 2072661, at *10 (E.D. Mo. June 9, 2022).

With respect to the second factor, consistency means "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administering medical finding(s) will be."   20 C.F.R. § 404.1520c(c)(2); *accord* 20 C.F.R. § 416.920c(c)(2).  "Stated more simply, an opinion is more persuasive if it is more consistent with the overall evidence as whole."  *Morton*, 2021 WL 307552, at *7.  Again, the ALJ found that Mullins' opinion was not persuasive because there are no "objective findings of the provider or the objective findings in the record as a whole" which support the limitations Mullins opined.  Tr. 21.  Further, the ALJ noted that while Plaintiff's "mental status examinations are variable," they at most "would support only moderate limitations in concentrating, persisting or maintaining pace . . . ."  Tr. 21.

The Court finds that the ALJ properly considered the consistency factor.  Despite not using the word "inconsistent," by finding that the record does not support limitations greater than those provided in the residual functional capacity, the ALJ in effect found that Mullins' limitations were inconsistent with the record.  *See Kelly M. v. Kijakazi*, No. 20-cv-2034 (ECT/JFD), 2022 WL 3227405, at *8 (D. Minn. Apr. 19, 2022) (quoting *Atwood v. Kijakazi*, No. 4:20-cv-1394 JAR, 2022 WL 407119, at *5 (E.D. Mo. Feb. 10, 2022) ("That the ALJ did not use the word 'consistency' is not determinative; word choice alone does not warrant reversal.")), *report and recommendation adopted* (D. Minn. May 16, 2022).  The ALJ considered Mullins' opinion alongside the other opinion evidence, including the state agency psychologists, who opined that Plaintiff had only moderate limitations in concentrating, persisting, or maintaining pace and adapting or managing

18

herself.  Tr. 17.  The ALJ also cited to objective medical records that were inconsistent with Mullins' extreme limitation in Plaintiff's ability to concentrate, persist, or maintain pace and marked limitation in her ability to adapt or manage herself.  For example, the ALJ noted that "[n]o mental status examination shows impaired memory, concentration or attention."  Tr. 17.  The ALJ cited a particular mental status examination of Plaintiff showing "good attention and concentration."  Tr. 20.  The ALJ also noted that while Plaintiff asserted that she has difficulties managing herself, like dressing and bathing, she is never described as disheveled or with poor hygiene by any clinician.  Tr. 17. Accordingly, the ALJ adequately addressed the consistency factor.  *See Hirner*, 2022 WL 3153720, at *6 (quoting *McClellan v. Kijakazi*, 2021 WL 4198390, at *3 (W.D. Mo. Sept. 15, 2021) ("By stating that Plaintiff's physical examinations 'do not show the level of dysfunction [Plaintiff] suggested,' the ALJ sufficiently considered and articulated the consistency of [Plaintiff's] medical opinion with other evidence in the record.")).

Further, other evidence mentioned throughout the ALJ's decision, such as Plaintiff's daily activities, reflects the inconsistencies with Mullins' opinion that Plaintiff is extremely limited in her ability to concentrate, persist, or maintain pace and markedly limited in her ability to adapt or manage herself.  Again, though Mullins opined that Plaintiff had marked limitations in her ability to manage herself, the ALJ noted that no provider wrote that Plaintiff was disheveled or had poor hygiene at her appointments.  Tr. 17.  The ALJ noted that Plaintiff "could pay bills and manage her finances, [and] take medications without assistance."  Tr. 16.  The ALJ also stressed that Plaintiff "manages her own complicated medical care," and can "follow instructions from clinicians, comply with treatment outside

of a doctor's office or hospital, and respond to questions from medical providers," further indicating that Plaintiff's daily activities are inconsistent with Mullins' opinion that Plaintiff is markedly limited in her ability to adapt or manage herself. Tr. 16. And despite Mullins' opinion that Plaintiff was extremely limited in her ability to concentrate and maintain pace, the ALJ noted that Plaintiff lives independently and "is able to watch TV, read, manage her finances, handle her own medical care, and attend church." Tr. 16-17. Moreover, the ALJ wrote that Plaintiff "is also able to get along with others, spends time with friends and family, attends church, and is able to deal appropriately with authority," and "[t]he medical evidence shows that [she] had a good rapport with providers, and is described as pleasant and cooperative." Tr. 16. *See Mark S. E. v. Kijakazi*, No. 20-cv-1954 (JFD), 2022 WL 834513, at *8 (D. Minn. Mar. 21, 2022) ("[T]he limitations in [the medical provider's] opinion are not consistent with Plaintiff's daily activities.").

For the reasons set forth above, the Court finds no error with respect to the ALJ's consideration of the supportability and consistency of Mullins' opinion under the regulations. The Court finds that the ALJ properly applied the factors under 20 C.F.R. §§ 404.1520c and 416.920c when determining the persuasive value of Mullins' opinion. The ALJ thoroughly and carefully reviewed the evidence in the record, and his "well-supported determination that [Mullins'] opinions were not [] supported by or consistent with other evidence in the record will not be disturbed." *See Jason L. v. Kijakazi*, No. 22-cv-1955 (PAM/ECW), 2023 WL 35876, at *3 (D. Minn. Jan. 4, 2023).

**D. Evaluation of Plaintiff's Subjective Complaints**

Plaintiff next argues that the ALJ erred in evaluating the intensity, persistence, and limiting effects of her pain. Pl.'s Mem. in Supp. at 17-20. Plaintiff contends that ALJ failed to consider the proper factors under 20 C.F.R. § 404.1529, such as her activities of daily living and the efficacy, type, dosage, or side effects of her prescribed pain medication. *Id.* at 18.

When determining a claimant's residual functional capacity, an ALJ takes into account the claimant's symptoms, such as pain, and evaluates the intensity, persistence, and limiting effects of those symptoms. *Titles II and XVI: Evaluation of Symptoms in Disability Claims*, SSR 16-3p, 2016 WL 1119029, at *2 (Soc. Sec. Admin. Mar. 16, 2016) [hereinafter SSR 16-3p]; *see, e.g.*, *Bryant v. Colvin*, 861 F.3d 779, 782 (8th Cir. 2017) ("Part of the [residual-functional-capacity] determination includes an assessment of the claimant's credibility regarding subjective complaints.").

> In considering the intensity, persistence, and limiting effects of an individual's symptoms, [the ALJ] examine[s] the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record.

SSR 16-3p, 2016 WL 1119029, at *4. Such evaluation includes consideration of "(i) the claimant's daily activities; (ii) the duration, frequency, and intensity of the claimant's pain; (iii) precipitating and aggravating factors; (iv) the dosage, effectiveness, and side effects of medication; and (v) the claimant's functional restrictions." *Vance v. Berryhill*, 860 F.3d

1114, 1120 (8th Cir. 2017); *see* 20 C.F.R. § 404.1529(c)(3); *accord* 20 C.F.R. § 416.929(c)(3); *see also* SSR 16-3p, 2016 WL 1119029, at \*7.

In considering the intensity, persistence, and limiting effects of a claimant's pain, the ALJ is required to "consider whether an individual's statements about the intensity, persistence, and limiting effects of his or her symptoms are consistent with the medical signs and laboratory findings of record."  SSR 16-3p, 2017 WL 5180304, at \*5; *see* 20 C.F.R. §§ 404.1529(a), (c)(2); *accord* 20 C.F.R. §§ 416.929(a), (c)(2); *see also, e.g.*, *Grindley*, 9 F.4th at 630; *Halverson*, 600 F.3d at 931.  "Credibility determinations are the province of the ALJ, and as long as good reasons and substantial evidence support the ALJ's evaluation of credibility, [courts] will defer to [the ALJ's] decision." *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016) (quotation omitted); *see Grindley*, 9 F.4th at 630 ("We normally defer to an ALJ's credibility determination."); *Hensley v. Colvin*, 829 F.3d 926, 934 (8th Cir. 2016) ("We will defer to an ALJ's credibility finding as long as the ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so." (quotation omitted)).

Here, the ALJ specifically acknowledged the requirements of 20 C.F.R. §§ 404.1529 and 416.929 when considering the intensity, persistence, and limiting effects of Plaintiff's pain. Tr. 17. The ALJ concluded that while Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms "are not entirely consistent with the medical evidence and other evidence in the record . . . ." Tr. 18.

In evaluating the intensity, persistence, and limiting effects of Plaintiff's symptoms, the ALJ focused mainly on the objective medical evidence. The ALJ pointed specifically to places in the record where medical providers noted that Plaintiff's mental status was intact or relatively stable upon examination. Tr. 20. The ALJ also discussed medical records indicating that Plaintiff's mood was "stable overall" and "improving," and that "she was managing her anxiety and mood issues relatively well." Tr. 20. The ALJ also discussed Plaintiff's physical impairments and noted that Plaintiff had several unremarkable physical examinations. Tr. 18-19. For example, the ALJ noted that examinations from June and July 2020 were unremarkable and physical therapy notes from August and September 2020 "indicate few objective abnormal findings on examination." Tr. 19.

Plaintiff is essentially asking this Court to reweigh the medical evidence. The ALJ ultimately concluded that the intensity, persistence, and limiting effects of Plaintiff's pain were not consistent with the objective medical evidence. Tr. 17-20. It is not surprising that Plaintiff is able to point to some evidence in a record of this magnitude showing greater limitations. *See, e.g.*, *Fentress v. Berryhill*, 854 F.3d 1016, 1021 (8th Cir. 2017) ("[I]t is not surprising that, in an administrative record which exceeds 1,500 pages, [the plaintiff] can point to some evidence that detracts from the Commissioner's determination."). The Court recognizes that a claimant's symptoms cannot be discounted "solely because the objective medical evidence does not fully support them." *See Bernard v. Colvin*, 774 F.3d 482, 488 (8th Cir. 2014) (quotation omitted); *see* 20 C.F.R. § 404.1529(c)(2); SSR 16-3p, 2016 WL 1119029, at *4-5. But inconsistency with the objective medical evidence is one

23

factor the ALJ is required to consider in evaluating the intensity, persistence, and limiting effects of those symptoms.  SSR 16-3p, 2016 WL 1119029, at *5; *see* 20 C.F.R. § 404.1529(a), (c).  The ALJ's extensive discussion of the record demonstrates that the ALJ thoroughly considered the objective medical evidence, and overall found the objective medical evidence inconsistent with the severity of pain alleged.

The ALJ also properly considered Plaintiff's daily activities in his analysis.  A claimant's daily activities is evidence outside of the objective medical evidence that an ALJ may consider as a factor when evaluating the intensity, persistence, and limiting effects of a claimant's symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; *see also, e.g.*, *Swarthout v. Kijakazi*, 35 F.4th 608, 612 (8th Cir. 2022) ("While daily activities alone do not disprove disability, they are a factor to consider in evaluating subjective complaints of pain.").  The ALJ found that Plaintiff's did "not have marked limitation in activities of daily living."  Tr. 16.  The ALJ noted that Plaintiff spends time with friends and family, attends church, watches TV, reads, manages her finances, and handles her own medical care.  Tr. 16-17.  "[I]t is well-settled law that 'a claimant need not prove []he is bedridden or completely helpless to be found disabled."  *Reed v. Barnhart*, 399 F.3d 917, 923 (8th Cir. 2005) (quoting *Thomas v. Sullivan*, 876 F.2d 666, 669 (8th Cir. 1989)).  Yet, a claimant's daily activities are *a factor* to be considered in evaluating allegations of disabling pain, *Swarthout*, 35 F.4th at 612, and the Eighth Circuit Court of Appeals has repeatedly held that the types of activities Plaintiff engages in are inconsistent with an allegation of total disability.  *See, e.g., Swarthout*, 35 F.4th at 612; *Bryant*, 861 F.3d at 782; *Ponder v. Colvin*, 770 F.3d 1190, 1195 (8th Cir. 2014); *Halverson*, 600 F.3d at 932.  Thus,

24

it was proper for the ALJ to consider Plaintiff's activities as one factor in concluding that her pain was not as limiting as alleged. *See, e.g.*, *Swarthout*, 35 F.4th at 612 ("The ALJ reasonably concluded that other daily activities—caring for personal hygiene, managing medications, . . . watching television, reading the newspaper, . . . handling money, doing some laundry, and doing some household chores in short increments—provide evidence that [the claimant] is not as limited as she has alleged." (quotation omitted)).

Contrary to Plaintiff's argument, the ALJ's analysis under 20 C.F.R. § 404.1529 was not inadequate. An ALJ is not required to discuss each of the factors set forth in 20 C.F.R. §§ 404.1529 or 416.929. SSR 16-3p, 2016 WL 1119029, at *7; *see Bryant*, 861 F.3d at 782; *Halverson*, 600 F.3d at 932. "Although it is the ALJ's responsibility to determine the claimant's [residual functional capacity], 20 C.F.R. §§ 404.1545(a); 404.1546(c), the burden is on the claimant to *establish* his or her [residual functional capacity]." *Buford v. Colvin*, 824 F.3d 793, 796 (8th Cir. 2016) (emphasis added). Here, the ALJ gave good reasons for finding that the alleged intensity, persistence, and limiting effects of Plaintiff's pain were not consistent with the overall evidence in the record within the framework of 20 C.F.R. §§ 404.1529 and 416.929. *See Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) ("Although the ALJ never expressly cited *Polaski* (which is our preferred practice), the ALJ cited and conducted an analysis pursuant to 20 C.F.R. §§ 404.1529 and 416.929, which largely mirror the *Polaski* factors.").

In sum, the ALJ properly considered the evidence in concluding that the claimed intensity, persistence, and limiting effects of Plaintiff's pain and symptoms were

inconsistent with the evidence in the record. Thus, the ALJ did not err in her consideration of the intensity, persistence, and limiting effects of Plaintiff's pain and symptoms.

## V. ORDER

Based upon the record, memoranda, and proceedings herein, and for the reasons stated above, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Summary Judgment, ECF No. 16, is **DENIED**.

2. The Commissioner's Motion for Summary Judgment, ECF No. 18, is **GRANTED.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: March __22__, 2023                              _____*s/ Tony N. Leung*_____
                                                     Tony N. Leung
                                                     United States Magistrate Judge
                                                     District of Minnesota

                                                     *Tracey L. W. v. Kijakazi*
                                                     Case No. 21-cv-2441 (TNL)

26